SCOTT C. CIFRESE, ISB #4965
DANIEL W. SHORT, *pro hac vice*
**PAINE HAMBLEN LLP**
717 W. Sprague Ave., Suite 1200
Spokane, WA  99201-3505
Telephone: (509) 455-6000
Facsimile: (509) 838-0007

Attorneys for Defendant
Idaho County Light & Power

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Case No. 3:17-cv-00391-CWD |
| Plaintiff, | ) |
| | ) **DEFENDANT'S REPLY IN SUPPORT** |
| vs. | ) **OF MOTION IN LIMINE TO EXCLUDE** |
| | ) **OPINIONS OF UNITED STATES'** |
| | ) **EXPERTS RE: FIRE CAUSE AND** |
| IDAHO COUNTY LIGHT AND POWER | ) **ORIGIN (DKT. NO. 63)** |
| COOPERATIVE ASSOCIATION, INC., | ) |
| | ) |
| Defendant. | ) |

Defendant, Idaho County Light and Power Cooperative Association, Inc., ("ICLP") through its attorneys, Scott C. Cifrese and Daniel W. Short, submits this Reply in support of its Motion in Limine to Exclude Opinions of United States' Experts re: Fire Cause and Origin (Dkt. No. 63). This Reply is supported by the Second Declaration of Scott C. Cifrese and the Declaration of Greg Schumacher, filed herewith.

## I.  INTRODUCTION

An expert's opinion must be reliable at each and every step, or it will be excluded under Federal Rule of Evidence 702 and *Daubert*.  In this case, upon rigorously examining Forth's investigation, it is apparent that her investigation is not reliable at each and every step. More than

the "weight" of Forth's opinions are at issue. Rather, Forth's investigative failings go to the core tenents of fire investigation methodology and the scientific process. Forth's factual investigation is inadequate and her factual findings are just wrong. Second, her analysis (applying her "expertise" to the facts) is conclusory and contrary to the scientific method. Forth admits she does not know electricity, she tested only one hypothesis, and the only testing she did was "cognitive testing," i.e., thinking about it. Finally, her conclusions are wrong, which the United States partially concedes.

The United States' retained experts cannot cure Forth's failings because it is antithetical to the scientific method to start with a foregone conclusion and work backwards to support it. Further, the United States' retained experts are in the same position as ICLP. That is, because Forth failed to collect sufficient data and failed to document and preserve the fire scene, it is impossible to analyze the data underlying the Fire's cause and origin to reach independent conclusions.

The risk of admitting the United States' causation testimony is that the jury will not understand the "analytical gap" between the flawed factual bases of Forth's opinions and the conclusions she reached. The analytical gap (and prejudice) increases with four additional experts opining that Forth's single theory was (basically) correct. The jury might also "count heads" when it comes to the United States' four retained experts who claim that their opinions are independent of Forth's. As such, the Court should act as a gate keeper to keep out this unscientific and unreliable evidence and exclude the fire cause and origin opinions of Forth and the United States' retained experts who relied on Forth's investigation.

## II. ARGUMENT

"[T]he day of the expert, who merely opines, and does so on basis of vague notions of experience, is over." *Solheim Farms, Inc. v. CNH Am., LLC*, 503 F. Supp.2d 1146, 1150 (D. Minn. 2007); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997) (courts should exclude opinion evidence that "is connected to existing data only by the ipse dixit of the expert," i.e., when the analytical gap between the data and proffered opinion is too great). "Experts are now held to a level of accountability that requires factual predicates, in historical fact, or in competent evidence, which allows a factfinder to independently verify the accuracy of the expert's results." *Solheim Farms*, 503 F. Supp.2d at 1150. "Absent such reliable verification, the expert's opinion is not admissible." *Id.*

**A.** **The United States fails to meet its burden to establish that Forth's cause and origin opinions are reliable.**

    *1.*    *Forth's opinions are unreliable because they are not based in fact.*

Federal Rule of Evidence 702(b) requires an expert opinion to be "based on sufficient facts or data"). "In deciding whether a step in an expert's analysis is unreliable, the district court should undertake a **rigorous examination** of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) (emphasis added).

Again, Forth's investigation led her to opine that the cause of the Sheep Fire was:

> Power pole at the end of a line was hit by a power surge. A jumper wire between two transformers on the power pole was loose causing the wire to pop, short, spark, and burn . . . dropping a hot wire piece on the ground at the base of the power pole.

As set forth in ICLP's Memorandum in Support of Motion in Limine, the material facts underlying this conclusion are wrong. *See* Dkt. No. 63-1 at 19 (no evidence that jumper wire was loose); 20 (no power surge); *see also* Dkt. No. 64 (Decl. of D. Short at ¶ 17, Ex. N (Lautenberger Dep.)) at 110:23 – 111:1; 131:14-25 (United States' expert, Dr. Lautenberger, testifying that he could not conclude, on a more probable than not basis, that the small metal piece caused the Fire).

The United States concedes that elements of Forth's conclusion are wrong, as the United States is no longer claiming that a "power surge" precipitated the Fire or that it was caused by the piece of metal found by Forth. Dkt. No. 68 at 22, 27-28. Instead, the United States claims that there was a "malfunction" on ICLP's equipment that caused sparking and the ejection of burning metal.

Nevertheless, the United States argues that Forth's factual record is somehow sufficient (and, therefore, reliable) because any incorrect facts found by Forth were due to the deviousness of ICLP's linemen. The United States argues that (1) ICLP linemen Anderson and Schumacher "lied" to Forth by telling her that Cook & Son's broke a "power line" and that a power surge occurred when the line was repaired, Dkt. No. 68 at 2, 22; (2) Anderson and Schumacher initially told Forth that there was a loose jumper wire connection, which they later "recanted" in order to "shift the blame" away from ICLP, *id.* at 7, 9, 24; and, (3) Forth was "permitted to rely on [these] admissions" to form her opinion that the Fire was caused by the small piece of aluminum wire she found, *id.* at 21, 26. The United States argues that ICLP is seeking to "capitalize" on the false statements. *Id.* at 22. Clearly, the United States is grasping at straws as it cannot support its bold assertion that ICLP intentionally conspired to feed Forth misleading information.

First, to claim that the linemen "lied" about Cook & Son's breaking a "power line" is a stretch. While he was driving to the Hegvets' property, Schumacher was informed that a power line had been broken along Highway 95, but he did not know what caused the power line to break. *See* Decl. of G. Schumacher at ¶ 3; 2d Decl. of S. Cifrese at ¶ 2, Ex. A (Schumacher Dep.) at 87:20-25 (testifying that he did not know anything about Cook & Son's involvement with breaking line). Anderson testified that he did not remember making such a statement to Forth. *Id.* at ¶ 3, Ex. B (Anderson Dep.) at 55:2-13. Moreover, even if Anderson told Forth that Cook & Son's broke a "power line," such statement is not inaccurate. "Power line" is a general term— it could mean phase wire or neutral wire, both are involved in power distribution, yet only the phase wire carries electricity. Stating that Cook & Sons broke a power line, meaning the neutral wire, may be imprecise, but it is not inaccurate or false. Again, if Forth had driven less than a mile down Highway 95 to investigate the Cook & Son's work site, she could have figured out for herself which line was, in fact, broken.

Second, there is no objective evidence that supports that the jumper wire connection was "loose," and the evidence is overwhelmingly to the contrary. The only person who inspected the jumper wire connection was Schumacher. Schumacher's written statement prepared on the day of the Fire states that the connection "seemed tight." *See* Dkt. No. 64 (Decl. of D. Short at ¶ 4, Ex. C (USFS Incident Rpt.)) at 466. Schumacher has testified consistent with that statement. *See id.* (Decl. of D. Short at ¶ 16, Ex. M (Schumacher Dep.)) at 92:3-25. The United States overlooks the significant fact that Schumacher never spoke to Forth, and the only contact he had with Finnegan was when Finnegan asked Schumacher to provide a written statement. Decl. of G. Schumacher at ¶¶ 5-8. Forth only spoke with Anderson during the time when Schumacher was

working at the top of the transformer pole. *Id.* at ¶ 5. Anderson, who had not inspected the transformer equipment, had no way of knowing whether the connection was loose, so it makes no sense that he would tell Forth, at least under the guise of any kind of authority, that there was a loose connection. *See* 2d Decl. of S. Cifrese at ¶ 3, Ex. B (Anderson Dep.) at 55-57 (Anderson denying that he told Forth or Finnegan that the jumper wire was loose). There are no "admissions" made by ICLP linemen as referenced in Forth;s report and she failed to reconcile her report (finding "loose connection") with Schumacher's written statement ("seemed tight") or follow up with Schumacher about the discrepancy. *See* Decl. of G. Schumacher at ¶ 8.

> 2. *Forth's application of the scientific method to the data (her analysis) is unreliable because she did not adhere to the scientific method, she did not possess the expertise to analyze the data she gathered, and did not test her hypothesis.*

Preliminarily, the United States argues that Forth was not required to "strictly adhere" to NFPA 921. Dkt. No. 68 at 2. But if an expert claims to follow NFPA 921 (as Forth claims, Dkt. No. 64 (Decl. of D. Short at ¶ 2, Ex. A (Forth Dep.)) at 84:22-25), she must actually follow it or her opinions will be excluded. *See Manuel v. MDOW Ins. Co.*, 791 F.3d 838, 845 (8th Cir. 2015) ("[I]f an expert purports to have followed NFPA 921, he must have followed it reliably, or his testimony may be excluded."). Forth's deviations from NFPA 921 and the NWCG Handbook evidence her departure from a reliable methodology. But her opinions are subject to exclusion for the overriding reason that "each and every step" of her investigation (i.e., facts, analysis, conclusions) is not reliable.

<u>Gathering data</u>. The United States questions what difference it would have made if Forth had more faithfully adhered to NFPA 921 protocols in collecting data, including documenting and preserving the fire scene. Dkt. No. 68 at 18-21. While each deviation from NFPA 921 alone

might not be grounds to find that Forth did not reliably adhere to the data-gathering step of NFPA 921, the culmination of all the deviations present a significant question about the adequacy and accuracy of the investigation. And contrary to the United States' argument, the failure to collect, document, and preserve data does prejudice ICLP because it is now impossible for other fire cause and origin investigators to evaluate the evidence to reach an independent conclusion. *See* Dkt. No. 64 (Decl. of D. Short at ¶ 14, Ex. K (Cole Dep.)) at 44:22 – 45:4, 60:11-13; 2d Decl. of S. Cifrese at ¶ 4, Ex. C (Cooper Dep.) at 91:11 – 92:10, 101-03 (defense cause and origin expert Jody Cooper testifying that he was unable to verify Forth's conclusions due to lack of documentation); NFPA 921 § 15.1.2 ("Thorough and accurate documentation of the investigation is critical because it is from this compilation of factual data that investigative opinions and conclusions can be supported and verified."). A cause and origin investigator's failure to properly collect evidence is grounds to exclude the expert's testimony. *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp.2d 844, 850-51 (N.D. Ohio 2004).

Analyzing data. The United States argues that Forth possessed the "knowledge, training, and experience . . . to analyze the evidence in this case." Dkt. No. 68 at 14. Yet Forth admits that she knows nothing about electricity or electrical distribution equipment or how either could cause arcing or otherwise operate to cause a fire. Dkt. No. 64, Decl. of D. Short at ¶ 2, Ex. A at 55:23 – 56:2, 58:3-10, 75:6-10, 93:7-16, 95:14-19, 97:21 – 98:25. Forth also admits that she did not consult with an electrical engineer or someone with expertise in electricity and electrical distribution systems. *Id.* at 76:20-24. Given these admissions, it cannot be disputed that Forth did not possess the knowledge, training, or experience to reach her conclusions.

Formulating hypotheses. In formulating hypotheses, Forth may have "considered" other potential causes, Dkt. No. 68 at 15, but she performed no investigation into other causes such as children, smoking materials, particle from vehicle exhaust system, or other electrical equipment in and around the Ice Plant. Theoretically, these potential causes could have been eliminated by asking the property owner and others present at the Hegvets' property some basic questions: "Any children around here today?" "Do you or anyone else who works at the Ice Plant smoke?" "Any trucks or mechanical equipment drive to or from the Ice Plant this morning?" Other electrical equipment could have been excluded by investigating and photographing the observably damaged electrical service equipment outside the Ice Plant and the machinery within. Rather than ascertaining facts that she could use to eliminate these potential causes, Forth simply disregarded them because she did not think about them, see evidence of them, or believed they were irrelevant because they were "outside" her dinner-plate-size origin site.

Testing hypotheses. The United States further argues that Forth tested her hypothesis[1] through "cognitive testing." Dkt. No. 68 at 25. It is not clear what this means other than Forth thought about the hypothesis in her mind, and it passed her subjective scrutiny. ICLP is not arguing that "further" testing should have been done, but that some, **any** testing, should have been done besides Forth noodling it over. At the very least, Forth should have consulted with an electrical engineer or other person with expertise in electricity, but she did not.

---

[1]At pg. 15 of its Opposition, the United States confuses Forth's hypothesis: "Forth tested her hypothesis that the Sheep Fire was ignited by sparks from a loose jumper wire." Forth never stated, or apparently ever considered, that the Sheep Fire may have been caused by "sparks." Her investigation focused entirely on the small piece of aluminum wire.

3. *Forth's ultimate conclusions are unreliable because they are not based in fact, are the result of a flawed analysis, and reek of expectation or confirmation bias.*

Courts presented with a *Daubert* motion do not consider whether an expert's opinions are right or wrong; rather, the court's role is to rigorously examine the factual basis and methodology underlying the opinions. Despite this, a district court still must consider an expert's conclusions to assess whether they could reliably flow "from the facts known to the expert and the methodology used." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000). Forth's ultimate conclusions do not "reliably flow" from the facts she found during her investigation and her analysis of those facts.

Forth was the first investigator on scene, assigned with the task of determining, and documenting, the cause and origin of the Fire. NFPA 921 and the scientific method required Forth to keep an open mind about what caused the Fire and to investigate, and eliminate, all possible causes. Forth's investigation, however, immediately targeted ICLP to the exclusion of investigating other potential causes. Forth's claims that she commenced her investigation with an open mind need not be accepted at face value. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) (*Daubert II*) (summarily dismissing "experts' unadorned assertions that the methodology they employed comports with standard scientific procedures"). Forth's claim about approaching this investigation with an open mind is also belied by the photographs she took of the power pole and Schumacher working in the bucket truck upon first entering the Hegvets' property, before she talked with anyone or had any idea where the fire started. *See* Dkt. No. 64 (Decl. of D. Short at ¶ 4, Ex. C (USFS Incident Rpt.)) at 85-87 (photographs); *id.* at ¶ 2, Ex. A (Forth Dep.) at 50:18 – 51:8 (explaining that she took

photographs of the linemen because, "to me [(Forth)] [the linemen] were in the area of my origin and cause.").

At bottom, the United States argues that Forth's investigation, while perhaps not perfect, got "close enough" to the correct result so as to be reliable and admissible. But reaching an opinion that is "close enough," does not satisfy the scientific criteria that Forth claimed to adhere to. Moreover, an opinion is not "close enough" to be admitted when it is not supported by fact, not subject to a scientific analysis, and when bias permeates the conclusions. Forth's conclusions regarding the cause and origin of the Sheep Fire should be excluded.

**B.      The United States fails to meet its burden to establish that its retained experts' opinions are reliable.**

Forth's investigation and cause and origin opinions are the lynchpin of the United States' case because the opinions of the United States' retained experts are based on Forth's investigation. Recognizing the weaknesses in Forth's report, the United States' retained experts go beyond Forth's investigation to proffer a causation theory unsupported by any physical evidence found by Forth. The United States' theory now is that "multiple" sparks or burning fragments of aluminum were ejected from the jumper wire when the jumper wire "malfunctioned." The United States has also moved away from attributing the cause of the Fire to a "power surge" or the Hegvets' machinery. The problem with the United States' new theory is that (1) Forth documented no physical evidence to support the theory, and (2) the United States' experts' opinions are not the result of independent analysis and testing. *Cf.* Dkt. No. 69 at 15.

There is no evidence that the Fire was caused by sparks or other aluminum particles from ICLP's equipment. Forth's investigation began and ended by focusing on the **one** small piece of

aluminum wire. Forth was so confident in her cause and origin conclusion that she seemingly did not look for, and definitely did not find, other pieces of metal (including aluminum slag) that could have potentially started the Fire. The United States' new causation theory is suggested by Mike Cole, the same investigator who admitted that (1) there was no fire scene to investigate by the time he set foot on the Hegvets' property in May 2013 (eight months after the Fire), Dkt. No. 64 (Decl. of D. Short at ¶ 14, Ex. K (Cole Dep.)) at 24:21-25; and, (2) Forth's documentation of her investigation was so inadequate that he could not verify her conclusions, *id.* at 44:22 – 45:4, 60:11-13. Cole's opinions are not the result of independent analysis and testing; he's only speculating about what might have occurred.

The United States also claims that the opinions of Drs. Palmer, Lautenberger, and Stevick are the result of "independent analysis and testing," Dkt. No. 69 at 15, and that each experts puts his discipline to bear to conclude, consistent with Forth's initial conclusion, that something having to do with ICLP's equipment caused the Fire, *id.* at 4. But putting a stamp of approval on an unreliable conclusion does not make the conclusion reliable. *See United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991) ("[T]he jury does not need an expert to tell it whom to believe, and the expert's stamp of approval on a particular witness'[s] testimony may unduly influence the jury.") (internal quotation marks omitted).

The United States also contends that its retained experts' opinions are based on evidence not available to Forth. Dkt. No. 68 at 4-5. The United States identifies "the sworn testimony of two witnesses that the fire started at the base of the transformer pole" as previously "unavailable" evidence. *Id.*; *see also* Def.'s Reply in Supp. of Mot. for Summ. Judg. at 3, n.1 (setting forth the inconsistent testimony of Hegvet and Law). But both Hegvet and Law were

present when Forth was doing her investigation, and both provided sworn written statements. This evidence was certainly available to Forth prior to the preparation of her report, which was not issued until months after the Fire.

The United States also cites the respective reports of its retained experts as other evidence available to its retained experts (and not available to Forth). *Id.* at 27-29. Expert opinions derived from the same quantum of evidence collected by Forth is not new evidence. The United States' experts are perpetuating, under the guise of expert opinions, Forth's fundamentally flawed investigation. The United States' experts are not relying on each other's opinions to reach conclusions based on the evidence; they are relying on each other's opinions to piece together a theory of liability that is no less shaky than Forth's initial conclusion.

The United States' retained experts should be excluded as unreliable because their opinions are not based in fact and are not the result of independent testing or analysis.

## III. CONCLUSION

For the foregoing reasons, ICLP respectfully requests that its Motion in Limine to Exclude Opinions of United States' Experts re: Fire Cause and Origin be granted, and the fire cause and origin opinions of Forth and the United States' retained experts—Cole, Palmer, Lautenberger, and Stevick—be excluded from trial.

DATED this 18th day of December, 2019.

PAINE HAMBLEN LLP


By: */s/ Scott C. Cifrese*
 Scott C. Cifrese
 Daniel W. Short
 Attorneys for Defendant Idaho County
 Light and Power

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 18th day of December, 2019, I filed the foregoing **DEFENDANT'S REPLY IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE OPINIONS OF UNITED STATES' EXPERTS RE: FIRE CAUSE AND ORIGIN (DKT. NO. 63)** electronically through CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

- **James P. Schaefer, Peter Wucetich**
  james.schaefer@usdoj.gov, peter.wucetich@usdoj.gov, elise.foster@ogc.usda.gov, jessica.black@usdoj.gov, CaseView.ECF@usdoj.gov, usaid.ecfnotice@usdoj.gov

**Manual Notice List**

The following is the list of attorneys who are not on the list to receive e-mail notices for this case (who therefore require manual noticing).

- No manual recipients

*/s/ Scott C. Cifrese*
Scott C. Cifrese, Attorney for Defendant
Idaho County Light and Power

I:\SPODOCS\00068\00293\PLEAD\1873239