UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>IDAHO COUNTY LIGHT AND<br>POWER COOPERATIVE<br>ASSOCIATION, INC.,<br><br>　　　　　　　Defendant. | Case No. 3:17-cv-00391-CWD<br><br>**MEMORANDUM DECISION AND<br>ORDER**<br><br>RE: Docket Nos. 87, 88 |

## INTRODUCTION

The Court has before it two motions in limine. ICLP requests seventeen in limine rulings. The United States asks the Court to exclude the expert report and expert opinion testimony of ICLP's damage expert, Daniel Winner. For the reasons expressed below, the Court will grant in part and deny in part the motions. While some rulings must await trial, this decision, along with the discussion with counsel during oral argument on the motions on March 2, 2020, should provide counsel some indication of the Court's approach to the evidentiary issues raised in the motions.

# BACKGROUND

This action arises out of a wildland fire, known as the Sheep Fire, that started on September 6, 2012, on property owned by Carolyn and Gary Hegvet at ICLP's electric service drop to the Hegvet's commercial ice plant. The fire burned approximately 49,592 acres of land, of which 43,206 is owned by the United States. The United States alleges it incurred $17,690,293.51 in damages related to injury to its land. The cause of the Sheep Fire is disputed.

The Court granted in part and denied in part ICLP's motion for summary judgment and denied ICLP's prior motion in limine directed at excluding the opinions of the United States' experts. (Dkt. 89, 92.) Trial in this matter against ICLP is set to begin on April 9, 2020.

# DISCUSSION

## A. Legal Standards Applicable to Motions in Limine

There is no express authority for motions in limine in either the Federal Rules of Civil Procedure or the Federal Rules of Evidence. Nevertheless, these motions are well recognized in practice and by case law. *See, e.g., Ohler v. United States*, 529 U.S. 753, 758 (2000). The key function of a motion in limine is to "exclude prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 (1984).

Generally, motions in limine excluding broad categories of evidence are disfavored—as such issues are more fairly dealt with during trial as the admissibility of evidence arises. *Sperberg v. Goodyear Tire & Rubber, Co*., 519 F.2d 708, 712 (6th Cir. 1975). Additionally, it is sometimes necessary to defer ruling until trial when a better

estimate of the impact of the evidence on the jury can be made by the trial judge. *Crawford v. City of Bakersfield*, 2016 WL 5870209, at *2 (E.D. Cal. Oct. 6, 2016).

Because "[a]n in limine order precluding the admission of evidence or testimony is an evidentiary ruling," *United States v. Komisaruk*, 885 F.2d 490, 493 (9th Cir. 1989), "a district court has discretion in ruling on a motion in limine," *United States v. Ravel*, 930 F.2d 721, 726 (9th Cir. 1991). Further, in limine rulings are preliminary and, therefore, "are not binding on the trial judge [who] may always change [her] mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

Fed. R. Evid. 401 states: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Under Rule 403, however, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

## B.     ICLP's Motions in Limine

### 1.     *Subsequent Remedial Measures*

ICLP argues that evidence of the fact ICLP lineman Greg Schumacher removed the damaged jumper wire and replaced it with two jumper wires on the day the fire started is inadmissible evidence of a subsequent remedial measure pursuant to Fed. R. Evid. 403.

The United States argues the evidence is admissible pursuant to Fed. R. Evid. 407 to prove ICLP had control of the transformer and the feasibility of precautionary

measures, as well as for impeachment purposes. The United States asserts that evidence

of post-accident repairs can be used to "impeach defendant's claims of proper

maintenance." Hon. Robert E. Jones, et. al., Rutter Group Practice Guide: Fed.

Trials & Evidence, ¶ 4:358 (The Rutter Group 2020). The United States indicates it

intends to use the evidence that the damaged jumper wire was replaced with two wires to

counter ICLP's argument that it properly maintained the transformer. The United States

argues also that, if the jury is not informed that ICLP replaced the damaged jumper wire

with two wires, it may assume only one wire was used, which could mislead the jury.

And finally, the United States asserts that, pursuant to Fed. R. Evid. 703, its retained

experts are entitled to rely on facts or data they were made aware of, even if the evidence

may be otherwise inadmissible, and that its experts may disclose such facts to the jury if

it would help the jury in evaluating their opinions.

Federal Rule of Evidence 407 outlines that:

> When measures are taken that would have made an earlier injury or harm
> less likely to occur, evidence of the subsequent measures is not admissible
> to prove:
> • negligence;
> • culpable conduct;
> • a defect in a product or its design; or
> • a need for a warning or instruction.
>
> But the Court may admit this evidence for another purpose,
> such as impeachment or – if disputed – proving ownership,
> control, or the feasibility of precautionary measures.

"Rule 407 is based on the policy of encouraging potential defendants to remedy

hazardous conditions without fear that their actions will be used as evidence against

them." *Pau v. Yosemite Park & Curry Co*., 928 F.2d 880, 888 (9th Cir. 1991). Fed. R.

Evid. 403 precludes evidence when its probative value is substantially outweighed by its prejudicial and confusing effect. Any remedial measures taken after an event, which would have made the event less likely to occur, are not admissible under Rule 407 to prove culpable conduct with regard to the event at issue. *See, e.g., In re Aircrash in Bali, Indonesia*, 871 F.2d 812, 816 (9th Cir. 1989).

The replacement of the damaged jumper wire with two jumper wires is a fact. Whether the replacement of the damaged jumper wire with two wires constitutes a subsequent remedial measure will depend upon the context of the testimony at trial. At this stage, it is not clear why Schumacher replaced the single jumper wire with two wires, nor is it clear Schumacher was attempting to remedy any particular problem that could have contributed to the cause of the fire. Accordingly, the fact he replaced the jumper wire with two wires is a fact that will not be excluded from evidence.

Nonetheless, ICLP's motion has some validity. Counsel for the United States is cautioned that argument will not be allowed during opening statements that this fact demonstrates negligence. If the United States intends to argue the evidence supports an inference that ICLP had control over the instrumentality of the fire, or the feasibility of precautionary measures, the Court will require evidence to support such an argument. The Court also will entertain a limiting instruction to caution the jury that the wire replacement, if it fits the definition of a "subsequent remedial measure," was not admitted for purposes of proving culpable conduct.

At this time, given the Court's limited knowledge regarding why the jumper wire was replaced with two wires, the motion will be denied. The Court will resolve objections to this evidence as they arise during the course of trial.

### 2. *Other Incidents of Burned Jumper/Secondary Wires (Board Meeting Minutes)*

ICLP moves to prohibit the United States from introducing evidence of other incidents reflected in ICLP's board meeting minutes of burned jumper wires. ICLP has provided the minutes wherein ICLP noted in 2001, 2004, and 2008 that wires had caught fire. (Dkt. 88-1.) ICLP argues evidence of these other incidents should be excluded under Fed. R. Evid. 404(b) or 403, because other acts cannot be used to prove ICLP acted in a similar manner to cause the Sheep Fire, and the prejudicial impact of the evidence substantially outweighs its probative value.

The United States counters that evidence of other acts is admissible pursuant to Fed. R. Evid. 404(b)(2) to prove knowledge. The United States argues that the board meeting minutes describing other incidents of burned wires establishes that ICLP was aware that jumper wires and secondary wires could catch fire without any outside cause, and that ICLP could have foreseen that the jumper wire on the Hegvet's property could catch fire without proper installation, maintenance or other relevant action by ICLP.

The Court has reviewed the meeting minutes where discussions about other instances of burned "secondary wires," "legs," and "jumpers" causing power outages are recorded. The board meeting minutes provide limited context as to what occurred to

cause these incidents, and any relevancy of the evidence is not apparent to the Court.[1]  As

referenced by the United States, the Court notes, however, that incidents occurred at the

Hegvet's property in 2008, and may bear some relationship to the parties' theories in this

case as to the cause of the Sheep Fire. The other incidents, however, appear remote in

time, occurred elsewhere, and could have been caused for any number of reasons.

The Court therefore conditionally grants ICLP's motion. Before any testimony or

evidence of any of these prior incidents is offered, the Court will require an offer of proof

by the United States outside the presence of the jury. Presently, the Court will preclude

any reference or argument regarding evidence of these other incidents.

### 3.      *Suppression Damages*

ICLP requests the Court rule, as a matter of law, that the United States is not

entitled to recover certain categories of damages that ICLP's retained expert, Daniel

Winner, concluded in his report are not supported by sufficient evidence. On the basis of

Mr. Winner's opinions, ICLP asks the Court to exclude any evidence of damages related

---

[1] For instance, on May 15, 2001, the minutes indicate a "secondary wire" was "burnt up in the bushing. Repaired the ends of the wire. 1 consumer out for 1 hr. 5 min." On May 29, 2001, "One leg was burnt off at the secondary bushing on the transformer. Made repairs to the wire. 1 consumer out for 50 min." On July 7, 2004, a "secondary wire had burnt out of the transformer. 1 consumer out for 55 min." While these other instances appear to involve burnt wires, no fires appear to have started, and the Court cannot say at this time whether the power outages described tend to prove knowledge on the part of ICLP that a similar incident could occur on the Hegvet's property absent proper installation, maintenance or other negligence. The only instance discussed in the minutes whereby a "jumper" caused a fire occurred on June 28, 2008. On that day, the Hegvets reported being out of power. ICLP "found a jumper had burnt off causing the wire to spark and weld back onto the phase wire. This caused a small fire. We turned the power off to repair the jumper. The consumer put the fire out." This particular instance may be relevant, but without the context of trial testimony, the Court cannot rule on the admissibility of this evidence until trial.

to items for which Mr. Winner concluded the Government lacks sufficient documentation, or for which he opines damages should not be recoverable. The United States argues the determination of damages proved by the United States is for the jury to make.

The Court agrees with the United States. "A motion in limine should not be used to resolve factual disputes or weigh evidence." *C & E Services, Inc. v. Ashland Inc.,* 539 F.Supp.2d 316, 323 (D.D.C. 2008). That is the province of the jury. *See Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150 (2000). Nor should a motion in limine be used as a substitute for a motion for summary judgment. *C & E Services*, 539 F.Supp.2d at 323. The United States bears the burden of proving any damages caused by ICLP's conduct under its theories of recovery. ICLP may cross examine the United States' witnesses in that regard, and argue to the jury based upon evidence it may present that certain damages are not supported by the evidence. But Mr. Winner will not be permitted to invade the province of either the Court, who will instruct the jury regarding the measure of damages, or the jury, who will determine what damages were proven to be proximately caused by the Sheep Fire.

Accordingly, ICLP's motion in limine to exclude evidence of damages that Mr. Winner opines are not be recoverable will be DENIED.

### 4. *Insurance/Financial Status*

ICLP requests the Court to prohibit any references to the existence or non-existence of liability insurance held by ICLP pursuant to Fed. R. Evid. 411. ICLP requests also that the United States should be prohibited from mentioning, either by

questions to witnesses or argument to the jury, ICLP's assets or financial ability to pay any award or judgment.  The United States does not oppose the motion. The motion will be GRANTED. The United States also is prohibited from arguing ICLP lacks the ability to pay any judgment that may be rendered.

**5.      *Jury Selection***

ICLP requests an order prohibiting any reference during voir dire on the subject of insurance, the insurance industry, insurance premiums, tort reform and legislation or any other insurance related topic, without advanced approval by the Court for such questions. The United States does not oppose the motion. The motion will be GRANTED. Both parties are prohibited from making any such references during voir dire or otherwise during trial.

**6.      *Offers of Settlement***

ICLP requests an order prohibiting any reference to any offers of settlement, judgment or compromise made by ICLP during the course of settlement negotiations, and any offers of judgment made pursuant to Fed. R. Civ. P. 68. The United States does not oppose the motion. The motion will be GRANTED. Both parties are prohibited from referring to or offering evidence of such matters.

**7.      *Use of Video Depositions in Opening Statements***

ICLP moves to preclude the playing of video-recorded deposition testimony during the United States' opening statement, because it runs the risk that a jury would put undue weight on that testimony since it could be played multiple times---once during opening, again during trial, and a third time during closing argument. The United States

argues, however, that the practice of playing videotaped deposition excerpts during opening statements is allowed. During oral argument, the United States explained that it planned to play a particular clip of Chad Hill's video deposition testimony during its opening statement.

Several courts have issued strong admonitions against such a practice. *See In re Ethicon, Inc.*, 2014 WL 505234, at *8 (S.D. W. Va. Feb. 5, 2014) ("[T]he use of video clips during opening statements is precluded as to all parties ....") (quoting *In re Bard, Inc.*, 2013 WL 3282926, at *8 (S.D. W. Va. June 27, 2013)); *Carpenter v. Forest Meadows Owners Ass'n*, 2011 WL 3207778, at *7 ("Video recordings of the deposition will not be permitted.") (emphasis in original); *Chopourian v. Catholic Healthcare W.*, No. 09–2972 KJM, 2011 WL 6396500, at *7 (E.D. Cal. Dec. 20, 2011) (denying the plaintiff's motion to use portions of videotaped depositions during opening statement); *Hynix Semiconductor Inc. v. Rambus, Inc.*, 2008 WL 190990, at *1 (N.D. Cal. 2008) ("Neither side shall use any videotaped deposition testimony in its opening statement."); *but see Sadler v. Advanced Bionics*, LLC, at *3 (W.D. Kent. April 1, 2013) (providing that the court "may" consider allowing the parties to utilize videotaped deposition testimony during opening statements); *MBI Acquisition Partners, L.P. v. Chronicle Pub. Co.*, 2002 WL 32349903, at *2 (permitting party to play segments of video deposition in its opening statement).

An opening statement is intended to forecast to the jury the evidence they will see and hear during the trial. It should therefore reflect the evidence that the party intends to introduce at trial. Because the Court does not know whether the testimony is admissible

until offered at trial, it is the Court's practice to prohibit the playing of deposition

testimony during an opening statement unless there is an agreement from the opposing

party to allow the same. The Court's prohibition applies equally to exhibits. Therefore,

the Court will grant the motion. *See Gonzalez Prod. Sys., Inc. v. Martinrea Int'l Inc.*, 310

F.R.D. 341, 344 (E.D. Mich. 2015) (to play deposition testimony during opening

statement, defendant would need to solidify that each statement it seeks to play via video

deposition is actually admissible testimony). If necessary, the Court can take up the issue

prior to opening statements by way of an appropriate motion by the United States, and a

copy of the particular video clip must be provided to the Court.

### 8.    *Discovery During Trial*

ICLP requests an order prohibiting Plaintiff's counsel from making requests or

demands in the presence of the jury for documents or for information that may be

contained in the records of ICLP's testifying witnesses. The United States does not

oppose the motion. The motion will be GRANTED, and the order applies equally to both

parties.

### 9.    *Argument Intended to Arouse Juror Passion*

ICLP argues that the United States should be precluded from using unfair

characterizations and attempts to sway the jury to decide this matter based on their

emotions instead of the evidence. For instance, ICLP asserts the United States should not

be allowed to state or imply that it was forced to bring this case to trial, or that ICLP

refused to settle. The United States argues ICLP's motion is ambiguous, overbroad, and

unworkable. ICLP's request as currently stated is too broad for the Court to articulate any

meaningful order. Accordingly, the Court denies ICLP's broad request to preclude arguments directed at arousing juror passions, although it cautions both parties to refrain from inappropriate references that stray from the evidence of the case.

The United States indicates, however, that it intends to offer evidence of the fact that ICLP was given a bill for collection of fire suppression costs and refused to pay them. The United States is seeking also interest and penalties, and to trigger those, the United States argues it must be able to show that a debt was owed and ICLP did not pay. During oral argument, the United States explained that federal law imposing interest and penalties may not be triggered unless the government presents evidence of a demand for payment that was not paid. Both parties stated on the record their preference the Court handle questions related to penalties and interest post-judgment. Accordingly, the Court will entertain a stipulation from the parties to reserve the presentation of evidence concerning pre-judgment interest and penalties until after a verdict is rendered. The deadline for submission of a stipulation to the Court is **April 1, 2020**.

### 10. *Learned Treatises*

ICLP requests that the Court prohibit the United States from using any learned treatises, either in direct or cross examination of any expert witnesses, which have not been disclosed and provided to defense counsel prior to trial, that are otherwise outside the scope of Fed. R. Evid. 803(18), or that lack the foundation required by Rule 803(18). The United States argues ICLP has not provided authority for the proposition that such treatises must be disclosed prior to trial.

Fed. R. Evid. 803(18) provides that the following category of evidence is not

excluded by the rule against hearsay:

> A statement contained in a treatise, periodical, or pamphlet if:
> (A) the statement is called to the attention of an expert
> witness on cross-examination or relied on by the expert on
> direct examination; and (B) the publication is established as a
> reliable authority by the expert's admission or testimony, by
> another expert's testimony, or by judicial notice. If admitted,
> the statement may be read into evidence but not received as
> an exhibit.

The basis for the "learned treatise exception" to the hearsay rule is that learned

treatises usually have "sufficient assurances of trustworthiness to justify equating them

with the live testimony of an expert. First, authors of treatises have no bias in any

particular case. Second, they are acutely aware that their material will be read and

evaluated by others in their field, and accordingly feel a strong pressure to be accurate." 2

McCormick on Evidence § 321 (8th ed.) The rule requires that the reliability of the

publication must be established, which demonstrates that it is viewed as trustworthy by

professionals in the field. Authoritativeness can be established by the expert of either

party or by judicial notice. *Id.* The rule requires also that the publication must be called to

the attention of an expert on cross-examination or relied upon by the expert in direct

examination. *Id.* There is no requirement in the rule that learned treatises used pursuant to

Fed. R. Evid. 803(18) be disclosed to the opposing party prior to trial. However, the

expert witness disclosure rules may address this issue.

During oral argument, the parties explained that certain experts reference

standards applicable to fire investigations in their expert reports. Both parties intend to

question the respective experts regarding the applicable standards. The Court agrees such questioning is proper. However, counsel will not be permitted to independently introduce a statement from a learned treatise, and question the expert regarding the same, during direct examination for the purpose of supporting the expert's opinion, unless that authority was specifically listed by the expert in his or her written report or during a deposition. On the other hand, provided a proper foundation is laid, nothing precludes counsel from utilizing the exception to the hearsay rule in 803(18) to read into evidence statements contained in a learned treatise during cross-examination of the opposing party's expert witness.

In light of the Court's guidance set forth above, ICLP's motion will be denied. The parties are expected to comply with the same, as well as with Rules 26(a)(2)(B) and 26(b)(4).

### 11.  *Exclusion of Witnesses*

ICLP requests the Court to sequester all non-party lay witnesses at trial pursuant to Fed. R. Evid. 615. The United States does not oppose the motion. During oral argument, the parties requested that the order be extended to apply to all witnesses. The motion will be GRANTED, and the order applies to all witnesses, other than the party representatives.

### 12.  *Referral to Plaintiff as a Victim*

ICLP requests the Court to prohibit the United States from referring to itself as a "victim," arguing that the term carries with it the connotation that ICLP committed a criminal act, and that the term would unfairly create a potential prejudicial inference in favor of the United States, citing Fed. R. Evid. 403 and 404. The United States does not

oppose the motion. The motion will be GRANTED, and the ruling extends to both parties.

**13.    *Previously Undisclosed Witnesses/Evidence***

ICLP requests the Court to exclude witnesses or evidence offered by the United States at trial that were not previously and timely disclosed pursuant to the Court's scheduling order and applicable rules of civil procedure. The United States does not oppose the motion. The motion will be GRANTED. The Court's ruling extends to ICLP as well. The Court will follow Rule 26.

**14.    *Court's Pretrial Rulings***

ICLP requests the Court exclude any references to the filing of its motion in limine, and any other pre-trial motions. The United States does not oppose the motion. The motion will be GRANTED, and the Court's ruling extends to both parties.

**15.    *Attorney-Client Privilege***

ICLP requests an order prohibiting the United States from mentioning, referencing, or presenting evidence related to matters that are subject to the attorney-client privilege. Additionally, ICLP requests the Court to forbid Plaintiff's counsel from questioning witnesses regarding whether they spoke with an attorney prior to giving their testimony, as their contact with an attorney is not relevant to their testimony or to the facts of this case. The United States counters that ICLP is seeking to prevent it from commenting on the fact that a witness spoke to an attorney, which fact is not privileged, and that it intends to present evidence witnesses altered their stories after speaking to an attorney. The United States essentially argues the evidence that one or more witnesses

spoke to an attorney and later presented a different story may be used for impeachment purposes.

Evidence is relevant if "it has any tendency to make a fact more or less probable that it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. In this instance, the evidence is a fact—that a witness or witnesses spoke to an attorney after the incident. Standing alone at this time, the fact is not relevant to the parties' claims and defenses. Furthermore, Rule 403 gives the Court "power to exclude evidence where the danger of prejudice outweighs the explanatory value." *Hill v. Rolleri*, 615 F.2d 886, 890 (9th Cir. 1980). Speaking to an attorney is not indicative of improper motive, nor suggestive of an impetus to change one's story. A witness's story may change for multiple reasons, whether they consult an attorney or not.

Without knowing, however, which witnesses or testimony ICLP's motion pertains to, the Court declines to rule on such a general request. The Court is sensitive to the remote possibility that this fact could be used for impeachment purposes. The Court will entertain objections at trial in line with the guidance provided above, and reserve ruling on the admissibility of such evidence until trial.

### 16.    *Opinions of United States' Experts re: Fire Origin and Cause*

ICLP renews its request that the Court exclude the opinion testimony of USFS fire investigator Captain Jill Forth, on the grounds that her opinions are unreliable. In turn, ICLP requests the Court exclude the opinions of the United States' retained experts because their opinions are derivative of Captain Forth's origin and cause investigation.

This motion was resolved in a prior decision, dated February 7, 2020. (Dkt. 89.) Consistent with the same, the motion will be DENIED.

### 17. *Expert Testimony*

ICLP requests generally that the Court limit expert witnesses from testifying about matters beyond the scope of the witness's expert report, citing Fed. R. Civ. P. 26(a)(2)(B)(i). The United States contends that expert testimony elicited at trial should not be limited in that fashion, because experts expounded on their opinions during their depositions. Therefore, the United States asserts the parties should be permitted to question expert witnesses regarding issues that arose during their depositions.

Fed. R. Civ. P. 26(a)(2)(B)(i) mandates that an expert's report contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Rule 26(e)(1) states, in part:

> With respect to testimony of an expert from whom a report is required under subdivision (a)(2)(B) the duty [to supplement or correct previously disclosed information] extends both to information contained in the report and to information provided through a deposition of the expert, and any additions or other changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due.

Rule 26 specifically contemplates that an expert will be able to testify at trial regarding the opinions expressed in both his or her expert report and deposition. *Saad v. Shimano Am. Corp.*, No. 98 C 1204, 2000 WL 1036253, at *22 (N.D. Ill. July 24, 2000) It would be inappropriate to allow the scope of an expert's trial testimony to turn on what opposing counsel chose to ask at a deposition. The Advisory Committee notes that, in some cases an expert report may obviate the need for an expert deposition altogether.

Advisory Committee Note, 1993 Amendment. And, once a deposition is taken, Rule 26(e)(1) requires disclosure of any material changes made in the opinions of an expert. Advisory Committee Note, 1993 Amendment.

Thus, expert witnesses called to testify at trial will not be limited solely to the precise opinions expressed in their reports. *Saad*, 2000 WL 1036253 at *22 (allowing expert to testify at trial regarding opinions expressed in both his expert report and his deposition) *Sadler v. Advanced Bionics, LLC*, No. 3:11–CV–00450–TBR, 2013 WL 1385386 at *1 (W.D. Ky. Apr. 3, 2013) (excluding evidence "from expert witnesses that is outside the scope of their written opinion or pretrial deposition testimony").

Accordingly, ICLP's motion, to the extent it requests a blanket order limiting all expert witnesses to testifying solely to the opinions as expressed or explained in their reports, will be denied. Expert witnesses can expound on their opinions so long as they are not giving new opinions or detailing new information supporting their opinions. To that end, the parties may raise objections at trial directed to opinions that fail to comply with Fed. R. Civ. P. 26's disclosure and supplemental disclosure requirements.

## C. United States' Motion in Limine

The United States seeks to exclude the expert witness report and testimony of ICLP's disclosed expert witness, Daniel Winner, who is expected to testify regarding the fire suppression costs claimed as damages by the United States. The United States argues his testimony should be excluded because: (1) he is not qualified to testify; (2) his testimony is unreliable; (3) his testimony consists almost entirely of legal conclusions; and (4) his testimony will not assist the trier of fact. The United States brings its motion

pursuant to Fed. R. Evid. 104(a) and 702, and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

ICLP responds that Winner is qualified to testify, and that any alleged shortcomings regarding his credentials go to the weight of his testimony, not its admissibility, and therefore do not provide grounds for exclusion of Winner's expert opinions. Alternatively, ICLP argues that, if the Court excludes Winner from testifying as an expert witness regarding his opinions, pursuant to Fed. R. Evid. 1006, Winner should be allowed to summarize the voluminous documents he reviewed relevant to ICLP's defenses to the United States' claimed damages. Winner reviewed over 70,000 pages of documentation supporting the United States' damages, and ICLP enlisted Winner to assist in reviewing the documents made available to ICLP.

### 1. *Applicable Standards*

The Court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. Fed. R. Evid. 104(a). If a party intends to introduce expert opinion testimony, Fed. R. Evid. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Here, ICLP bears the burden of establishing Daniel Winner's expert opinion testimony is admissible. *Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594,

598 (9th Cir. 1996).

Under *Daubert*, the Court's inquiry into admissibility is a flexible one. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (citing *Alaska Rent–A–Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013)). In evaluating proffered expert testimony, the trial court is "a gatekeeper, not a fact finder." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (citation and quotation marks omitted).

"[T]he trial court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Id*. at 564 (quoting *Daubert*, 509 U.S. at 597). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id*. at 565 (citation and internal quotation marks omitted). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id*. at 564 (citation omitted). The Court is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent–A–Car*, 738 F.3d at 969. Stated simply, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his [or her] testimony has substance such that it would be helpful to a jury." *Id*. at 969–70. Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge. *City of Pomona*, 750 F.3d at 1044. The trial court should not make credibility determinations that are reserved for the jury. *Id*.

While evidentiary hearings might help the Court to conduct an adequate *Daubert* analysis, the Court is not required to hold such hearings prior to trial to discharge its gatekeeping function. *See United States v. Alatorre*, 222 F.3d 1098, 1100-02 (9th Cir. 2000) ("The trial court must have the same kind of latitude in deciding how to test an expert's reliability, and to decide whether and when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides whether or not that expert's relevant testimony is reliable....") (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)). What is required is that the Court allow counsel "to explore the relevance and reliability of the proposed testimony" prior to its admission. *Id.*

Fed. R. Evid. 1006 allows the use of "a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court."

The Court determines that it has an adequate record before it to make its ruling without holding an evidentiary hearing. The parties provided Winner's report, deposition testimony, and affidavit. *See Oddi v. Ford Motor Co.*, 234 F.3d 136, 154 (3d Cir. 2000) (finding no abuse of discretion for failure to hold an evidentiary hearing when district court had depositions and affidavits of plaintiffs' experts), *cited in In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124, 1139 (9th Cir. 2002). However, its ruling may be amended or modified based on evidence presented on damages during the United States' case in chief.

## 2. *Daniel Winner's Experience and Opinions*

The United States does not dispute Winner's background and education, set forth in detail in ICLP's memorandum, and briefly summarized here. (Dkt. 91, 91-2 at 56.) Winner's expertise is grounded in his experience working for the USFS between 1969 and 1999. Winner's employment history reflects experience in wildland fire management, fire planning, fire suppression cost analysis and budgeting, and fire suppression. His employment history included positions in the "Operations Section," the "Logistics Section," and the "Planning Section" of the incident command system. *See* Decl. of Winner. (Dkt. 91-1.) Through his work in incident command management, Winner became familiar with Finance's role in fire suppression efforts even though he did not work in the Finance Section.

In 1983, Winner became the Assistant Director of Aviation and Fire Management for the Southwestern Region (Arizona and New Mexico). *Id*. at ¶ 8; *see also* Winner Dep. At 11:13-14. In this role, Winner was involved in fire suppression efforts on a regional level. Decl. of D. Winner at ¶ 8. He was responsible "for budgeting and the Cooperative Fire Management Program dealing with states and the federal government agency interactions and bills back and forth, and worked in fire prevention for part of that time." Winner Dep. at 11:14- 19; *see also* Decl. of Winner at ¶ 11. Winner worked with USFS accountants in carrying out his role as Assistant Director. *Id*. at ¶ 11.

During his time as Assistant Director, Winner also "worked on the Fire Planning and Analysis System, which was a program the Forest Service had been using since about 1980s to justify budgets to Congress, an elaborate computer modeling system." Winner

Dep. at 11:20-23. As part of this work, Winner helped develop the "P-code system" to track fire suppression expenditures, *id*. at 20-21, which system is still in use today, *see* Dkt. No. 87-2 (Decl. of L. Curillo) at ¶ 2. Fire suppression costs are tracked as they are incurred, and are entered into a software program to manage incident recourses. Decl. of Curillo ¶ 3.

ICLP retained Winner in this case to assist ICLP in understanding, and challenging, aspects of the United States' claimed damages, which allegedly total nearly $25 million.[2] In forming his opinions, Winner reviewed and cataloged the documentation supporting the United States' claimed damages. Decl. of D. Winner at ¶ 12. Drawing upon his experience in the USFS, and his review of the USFS's Service-Wide Claims Management Handbook (hereinafter, "USFS Handbook"), and relying on common sense, Winner opines that certain types of damages are not recoverable and ascertains the dollar amount of each non-recoverable category of damages. *Id*. at ¶ 13 & Ex. A; *see also* Dkt. No. 88 (ICLP's Motions in Limine) at 4-8. Winner has prepared numerous spreadsheets to support his calculations.

In his report, Winner opines that expenditures not supported by "source level documentation," (i.e., a physical receipt), are not verifiable and should not be recoverable as damages. According to Winner, $5,120,167.38 of the claimed fire suppression costs lack source level documentation. (Dkt. 87-6 at 3.) The United States responds that fire

---

[2] This figure includes the claimed damages of $17,690,293.51 directly related to fire suppression costs and expenses, plus interest and penalties.

suppression costs are tracked in real time as incurred and entered into a program which prepares a transaction register, and that Winner lacks knowledge regarding how costs are certified. (Dkt. 87-2 at 2; 94.)

Second, Winner's review revealed the United States employed 129 trainees on the Sheep Fire who were paid in total approximately $979,810.68. Winner opines these costs are not recoverable as the work performed by trainees is redundant with other employees, and they were gaining valuable training experience. The United States claims Winner lacks any expertise or knowledge regarding how the USFS employs trainees.

Third, Winner claims that "programmatic costs," which are costs the USFS would have incurred regardless of whether the Sheep Fire had started, should not be recoverable. According to Winner, these costs (such as firefighter's salaries, and aircraft availability contracts) amounting to approximately $2,000,000.00 are not recoverable. The United States contends that Winner's opinion is not based upon any analysis.

Fourth, Winner's review revealed that $754.16 of costs claimed were for resources staged, but not used in suppression efforts. According to Winner, these costs should not be attributed to the Sheep Fire.

Finally, Winner's review revealed that approximately $3,372.13 of the costs attributed to the Sheep Fire were for payment of management supervision charges, such as salaries of forest supervisors, district rangers, and others. Winner opines that these costs would have been paid regardless of the Sheep Fire, and therefore should not be part of the United States' damages.

3.  *Analysis*

    *Winner's Qualifications*

The United States first challenges Winner's qualifications for the following reasons: he has little experience with fire suppression teams; he has never worked in the finance section of a fire suppression team; he has never prepared a transaction register or a collection bill; and he has no background in accounting. Even conceding his employment may qualify as specialized knowledge, the United States argues Winner's employment was during a different era, and he has long since retired. ICLP counters that Winner's employment with the USFS, where he garnered experience with USFS fire suppression activities, fire suppression planning and resource allocation, accounting practices and record keeping requirements, sufficiently qualifies him as an expert.

An expert witness may rely solely on experience. *Kumho Tire Co., Ltd*., 526 U.S. at 149 ("no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience"); *see* Fed. R. Evid. 702 Advisory Committee Notes (2000 Amend.). To meet the reliability threshold under Fed. R. Evid. 702, an expert's testimony must have "a reliable basis in the knowledge and experience of the relevant discipline." *Messick v. Novartis Pharm. Corp*., 747 F.3d 1193, 1197 (9th Cir. 2014) (quoting *Kumho Tire Co., Ltd*., 526 U.S. at 149). "A lack of specialization affects the weight of the expert's testimony, not its admissibility." *In re Countrywide Financial Corp. Mortgage-Backed Securities Litigation*, 984 F. Supp. 2d 1021, 1028 (C.D. Cal. 2013).

The Court concludes Winner's experience adequately qualifies him to testify as an expert and offer opinions informed by his expertise. Winner has a background in fire suppression, both on the ground and with respect to various administrative aspects of fire suppression and management based upon a lengthy employment history with USFS. With the proper foundation, Winner may be qualified to provide opinions about fire suppression activities, cost accounting procedures (such as what documentation is typically kept), and other aspects of the business of fire suppression as it was carried out by the USFS. He also appears to have knowledge of the types of costs USFS tracks, having developed the P-code system to track fire suppression expenditures that is still in use today, and which was used to track suppression costs for the Sheep Fire.

Accordingly, Winner is qualified as an expert based upon the experience and knowledge gained by way of his employment with the USFS. The Court will permit objections to be made at trial, however, regarding foundational aspects to certain categories of damages to which Winner may be asked to opine and to which the United States claims he is wholly unqualified by his experience.

*Reliability*

Next, the United States argues Winner's opinions are mere lay legal opinions based upon "common sense," and are contrary to several legal authorities and the USFS's own agency handbooks. Thus, the United States argues Winner's opinions are not reliable. For instance, Winner opines that "base pay" allocated to Sheep Fire suppression costs is not recoverable because fire fighters would be receiving their salaries regardless

of whether they were fighting the Sheep Fire. The United States argues this opinion is contrary to the directives set forth in the USFS Handbook.

Courts frequently accept experience-based, expert opinion testimony on relevant aspects of industry practice that do not offer themselves readily to scientific or statistical analysis. *Ralston v. Mortg. Inv'rs Grp., Inc.*, No. 08-536-JF PSG, 2011 WL 6002640, at *4 (N.D. Cal. Nov. 30, 2011). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. For example, in *Pecover v. Elec. Arts Inc*., the court allowed proposed expert testimony on the video game industry regarding various aspects of retail handling and strategy in pricing and selling video games, based on the expert's many years as a senior executive at a large electronics retailer, as well as a private consultant. 2010 U.S. Dist. LEXIS 140632, at *9, 14–15.

The United States' efforts to characterize Winner as a mere former employee of the USFS, and not a qualified expert, places undue emphasis on the preference for empirical evidence, application of formal methodologies, or the conduction of formal research. Formal research and the testing of hypotheses is not required under Rule 702 as a basis for the admissibility of opinion testimony based upon relevant work experience within a particular industry. The United States' arguments that Winner's testimony runs counter to the language of the USFS manual, current practice, and standard operating procedures are all subjects proper for cross-examination.

*Substance of Opinions*

Third, the United States argues Winner's opinions regarding what damages are not recoverable constitute lay legal opinions and run afoul of the role of the Court and the jury. For instance, Winner opines that certain costs lacking physical documentation are not "recoverable," and he renders a similar opinion for several other categories of costs the United States claims as damages.

Pursuant to the ruling regarding ICLP request number three, above, Winner will not be permitted to offer opinions which invade the province of either the Court or the jury. Certain opinions, such as what costs Winner believes are recoverable or not, may not be allowed. Whether certain damages are recoverable or not connotes a legal conclusion. To that end, the Court will carefully consider the damages evidence presented by the United States, as well as the instructions to be given to the jury regarding damages, during trial. When Winner testifies, the Court will determine whether his opinions regarding the three or more categories of damages challenged by ICLP will be allowed.

The Government argues also that its actions should be afforded a "presumption of regularity" such that their damage calculations are to be given some amount of deference.[3] This presumption, the United States argues, allows the Court to "presume that public officers have properly discharged their official duties." *Cleveland Assets, LLC v.*

---

[3] For instance, the United States contends costs lacking "source level documentation," such as physical receipts, but which information was entered into the cost accounting ledger, should be afforded a presumption of regularity.

*United* States, 883 F.3d 1378, 1382 (Fed. Cir. 2018). ICLP argues the presumption of regularity does not apply to this case.

A review of the cases cited by and relied upon by the United States indicates the presumption of regularity is applied when the Court is considering the actions of Government agencies vis-à-vis the carrying out of policy or procedure wherein some deference to agency action is appropriate. For instance, in *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001), the United States Supreme Court noted that a presumption of regularity attached to its review of administrative proceedings undertaken by the employment review board for the U.S. Postal Service, and that the court therefore accorded the agency deference. The presumption does not apply to consideration of whether Winner qualifies to testify as an expert and offer his opinions. *See* Section B.3, above. Nor does it apply to relieve the United States of its burden of proof.

*Whether Winner's Opinions Will Assist the Trier of Fact*

Last, the United States argues Winner's opinions are nothing more than conclusions as to what the law should be and how the USFS manual should be interpreted, and will not assist the jury. On the contrary, ICLP argues Winner reviewed over 70,000 pages of documents supporting the United States' claim for damages, summarized them in spreadsheet form, and identified the costs attributable to certain types of expenditures. ICLP argues that Winner's summary evidence is admissible pursuant to Fed. R. Evid. 1006.

An expert's opinion will assist the trier of fact on a particular question or subject, if the expert's opinion provides "appreciable help" to the trier of fact. *Goodwin v. Danek*

*Medical, Inc.*, Case No. cvs-95-433-HDM(RJJ), 1999 WL 1117007 at* 3 (D. Nev. July 8, 1999); *see also Almy v. Davis*, Case No. 2:12-cv-129-JCM-VCF, 2013 WL 819875 at * 4 (D. Nev. Mar. 5, 2013) (expert's opinion would not assist the trier of facts to determine defendants' intent during alleged use of force). "If an individual is not qualified to render an opinion on a particular question or subject, it follows that his opinion cannot assist the trier of fact with regard to that particular question or subject. *Morin v. United States*, 534 F. Supp. 2d 1179, 1185 (D. Nev. 2005). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Porter v. Whitehall Labs., Inc*., 9 F.3d 607, 613 (7th Cir. 1993).

At this juncture, based upon the Court's review of the materials in the record, the Court concludes Winner's opinions will assist the trier of fact to parse through the voluminous documents anticipated to be offered by the United States to support its damages claims. Winner condensed vast amounts of documents and financial data into a format easily understood by a lay person. Winner's analysis is the type of assistance that will assist the trier of fact. Further, to the extent he is summarizing voluminous records and materials, as appears to be the case, this aspect of his testimony is properly admitted under Fed. R. Evid. 1006 as well as Fed. R. Evid. 702 in that he is identifying what he, given his background and experience, considers to be the most important issues to consider in evaluating the United States' damage claims. *See, e.g., In re Yasmin and YAZ*

*Marketing, Sales Practices and Products Liability Litigation*, 2011 WL 6302287 at *13

(S.D. Ill. Dec. 16, 2011).[4]

---

[4] The United States in its Reply Memorandum raised for the first time that Winner did not use the correct transaction register to prepare his damage calculations. (Dkt. 94-3.) The United States indicates that the USFS based its damage calculation off of the transaction register Bates stamped SHEEP 067189-067709. Winner, however, apparently used a different transaction register Bates stamped SHEEP 000533. (ECF No. 91-2, p. 2.) The United States explained during oral argument that the discrepancies call into question Winner's cost summaries. The Court will not exclude Winner's opinions on this ground. The United States will, however, have a full and fair opportunity to address any concerns about incompleteness or correctness during cross-examination and presentation of contrary evidence. See Yasmin, 2011 WL 6302287 at *13.

## CONCLUSION

This order is intended to assist the parties in their preparation for trial, and to the extent possible, to give the parties guidance in structuring their cases and presentations for the upcoming trial. The final ruling on the admissibility of any particular testimony or piece of evidence will, however, be made at trial once the Court has had the opportunity to view it in the context in which it is offered and the applicable rules of evidence.

During trial, the parties are directed to advise the Court in advance of any time-consuming evidentiary issues they anticipate arising so that the Court can address the same outside the presence of the jury. The parties shall do so by notifying the Court's Staff Attorney regarding such issues well in advance of the evidence being offered.

## <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED:**

A.    Defendant's Motion in Limine (Dkt. 88) is **GRANTED IN PART AND DENIED IN PART**, as follows:

1. Subsequent Remedial Measures – **DENIED**.

2. Other Incidents – **Conditionally GRANTED**. The Court will require an offer of proof outside the presence of the jury before evidence of any prior incidents of burned wires or fires are introduced.

3. Suppression Damages – **DENIED**.

4. Insurance/Financial Status – **GRANTED.**

5. Jury Selection – **GRANTED.**

6. Offers of Settlement – **GRANTED.**

7. Video Depositions in Opening Statements – **GRANTED**.

8. Discovery During Trial – **GRANTED.**

9. Argument Intended to Arouse Juror Passion – **DENIED.**

10. Learned Treatises – **DENIED**.

11. Exclusion of Witnesses – **GRANTED**. The ruling applies to all non-party representative witnesses.

12. Referral to Plaintiff as a Victim – **GRANTED.**

13. Previously Undisclosed Witnesses/Evidence – **GRANTED.**

14. Court's Pretrial Rulings – **GRANTED.**

15. Attorney-Client Privilege – **RESERVED for trial**.

16. Opinions of United States' Experts – **DENIED.**

17. Expert Testimony – **DENIED**. Parties may raise objections at trial directed to opinions that fail to comply with Fed. R. Civ. P. 26's disclosure and supplemental disclosure requirements.

B.    Plaintiff's Motion in Limine (Dkt. 87) is **DENIED IN PART, and RESERVED**

**FOR TRIAL IN PART.**

DATED: March 6, 2020

Honorable Candy W. Dale
United States Magistrate Judge